# Morrow, Appellant, *v*. The Tunkhannock Ice Company.

*Contract—Sales on commission—Master and servant.*

Where an ice company agrees in writing to give to an individual the right
to sell all of its product for the term of five years on a commission of "one
dollar per car for ice shipped from the company's plant" the contract does
not establish the relation of master and servant, but constitutes an em-
ployment to make sales on commission. If the sales agent thus employed
makes no sales and is discharged before the end of his term, he can recover
nothing from the corporation.

Argued March 6, 1905.   Appeal, No. 271, Jan. T., 1904,
by plaintiff, from judgment of C. P. Monroe Co., Feb. T.,
1901, No. 23, on verdict for defendant in case of Cyrus C.
Morrow v. The Tunkhannock Ice Company.   Before MITCH-
ELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ.
Affirmed.

Assumpsit upon a written contract.   Before FERRIS, P. J.

The court charged in part as follows:

The action is grounded upon a written contract bearing
date of October 24, 1899, between C. C. Morrow, this plain-
tiff, and the Tunkhannock Ice Company, this defendant.
By that contract the plaintiff agrees to accept the position of
general sales agent of the Tunkhannock Ice Company for the
term of five years from January 1, and as such he undertakes
to devote his time and ability to the best interests and welfare
of the said company. He further agrees that he will solicit
trade, negotiate and make sales of the entire capacity of said
company, attend to the collection of accounts, which, however,
are to be payable to the treasurer of the company directly. He
is also to adjust all freight rates, and in general arrange for
the sale and delivery of the ice product of the company. But
he further agrees that no contract for the sale of ice shall be
made without the consent of the executive committee of the
company ; and also agrees to report all sales that shall be made
by him daily, direct to the office of the company. And he
further agrees that he will give preference of sale to the ice of
the Tunkhannock Ice Company, until the ice of said company

is disposed of. In consideration of the faithful performance of his duties, the ice company agrees to employ him as general sales agent for the said term of five years, and further agrees to pay the plaintiff for his services during said term, if he shall so long remain in the employ of the company, $1.00 per car for ice shipped from the company's plant, except such water ice as may be sold to Isaac Stauffer under an agreement with him.

[It is further provided in the contract that if the plaintiff fails to attend to the duties of his employment to the injury or detriment of the defendant's interest, that the agreement may be cancelled at the option of the defendant company, without notice to the plaintiff or payment to him of any compensation or commission for the remainder of the term. That I believe is the contract so far as it is material to this case. The first instruction on that contract which we give you, is, that in order to entitle the plaintiff to recover in this action, he must have shown to you by the preponderance of the evidence in the case, that he himself did substantially perform the undertakings on his part, which are contained in this agreement. That is to say, he must show substantial performance of this agreement, by devoting his time and ability to the best interests and welfare of the said company. Do you believe from the evidence that he did that or that he did not? Second, that he will solicit trade and negotiate and make sales of the entire capacity of the said company.] [3] Do you believe that he did that? Do you believe that he did his best endeavor in that regard, fairly, conscientiously; that he did as well as he could? If he did all that he could, and all that could reasonably be expected of him, in order to negotiate and make sales of the capacity of this company, and such sales were not made because the company did not approve of the terms of the sales, or if the making of the sales was prevented by the independent action of the defendant themselves, through other sales agents, or directly disposing of their entire product of ice, then if you also believe that the plaintiff did his duty under this contract, he would nevertheless be entitled to recover compensation for it, even though the sales were not concluded; and that by reason of a further clause in the contract which provides that no contract for the sale of ice shall be made without the consent of

the executive committee of the said company, they reserve to themselves the right to conclude all sales.

There are three elements, necessary elements in a contract for the sale of personal property. The first is, two parties the seller and a buyer. The second is the thing which is to be sold, and the third is a price. Where there is no delivery of the article at the time of .the contract the price must be agreed upon. Where there is a delivery of the things sold at the time of the sale, the price need not necessarily be agreed upon. In such a case the law will imply the price to be what the thing sold was reasonably worth. An example of the application of that principle is where a man comes into a store and purchases some article of merchandise, nothing being said about the price; it is charged to him and the merchant could recover from him, there being a delivery of the articles, whatever the market price—whatever the thing sold was reasonably worth, according to the market price then ruling.

Where there is neither a delivery of the article sold, nor an agreement as to the price for it, there is no sale.

He agrees to report sales daily. From what has been just stated to you as to the law of a sale of personal property, it is evident that in this portion of the contract the use of the word sale, where it is stated that the plaintiff undertakes to make sales, doing that in connection with the whole contract; it is evident that what is intended there is, that he shall make sales so far as under the contract he is authorized to, and that he is to report such sales to the company for their approval or disapproval. That is to say he is to make a sale upon condition that the sale is to be approved by the company, and report what he has done in that regard. It is not a complete legal sale under this contract until the contract for the sale shall be consented to by the executive committee of the company. Therefore under this contract the plaintiff was not bound to make a complete sale, but an incomplete sale subject to the ratification of the proper officer of the company.

He is bound to report all sales which shall be made by him daily direct to the office of the company. That raises a question for you to determine under the evidence in the case. Did he substantially perform that undertaking? Did he make daily reports of his performance of his duty in this respect to

the office of the company. If he did not do so literally and exactly, did he do so substantially, so that the company were promptly informed of everything which he was doing in their behalf; so that his actions in the carrying out of the contract would properly inure to the benefit of the company which employed him? [Was there a substantial performance by Mr. Morrow of his undertaking under this contract? If you believe from the evidence that there was, if you believe from the evidence in this case that he did what he agreed to do; then you would be justified in finding a verdict in his behalf for $1.00 per car on the amount of ice sold during the season of 1899 and 1900 by this company, amounting to $1,356 with interest from January 5, 1901.

In arriving at that, gentlemen, you will remember the testimony as to the total amount of cars of ice which were sold that season, amounting to 1,500, and some exclusive of the Stauffer contract, and you will remember that a portion of it was a sale to the Delaware, Lackawanna and Western Railroad Company as to which Mr. Morrow had already been settled with and paid; so that the amount which I have just given you is the amount remaining, for which Mr. Morrow would be entitled to a verdict at the rate of $1.00 per car, if you believe that he is entitled, under the evidence, to any verdict at all in this case.] [4]

[So that, gentlemen, the question for you to consider is, the main, the controlling question in the case whether Mr. Morrow, under the evidence which you have heard was faithful to his employers, whether he did or did not substantially do that which he agreed to do. If you believe that he did not then your verdict should be generally for the defendant. If you believe that he was not faithful; that as testified to by one witness, he undertook to do that which would divert the price of sales from the company into his own pocket; if you believe that he failed to make such reports of his work to the company as would keep them thoroughly advised, and would be substantial and continuous and to all intents and purposes a daily report of what he did, and of the sales negotiated or incomplete sales he made; if you find that he failed to do this to the detriment of the company, and that they were obliged because he failed, notwithstanding notice to him to proceed to

get purchasers for the ice ; if you believe that the company it-
self was obliged to make other arrangements to get their prod-
uct sold, then he would not be entitled to recover in this
case.] [5]

As already stated to you we do not propose to enter into a
detailed discussion of the evidence.   The evidence is for your
fair and conscientious consideration, and in considering the
testimony of the various witnesses in the case, if that tes-
timony is conflicting in any way it is your duty to endeavor
to reconcile the conflicting statements.   If you are unable to
do so, it is for you to say which of the witnesses you will be-
lieve and what weight you will give to their statements upon
the stand.   In passing upon this question of credibility, you
may and should take into consideration the interest which any
particular witness has in the outcome of the trial, if any such
interest appears ; any feeling, bias or prejudice displayed by
any witness on either side of the case, if such feeling, bias or
prejudice appears.   You should consider the bearing and de-
meanor of the witness upon the witness stand; his manner of
testifying in the case ; whether he does or does not impress
you as one who is desirous of telling the truth and is trying to
do so.   You may take into account the inherent probability or
improbability of the story he tells, his means of knowledge of
the truth of that whereof he speaks ; his apparent strength or
weakness, as the case may be, of memory, and in general any
proved facts or circumstances in the case which tend either to
corroborate him or contradict him, or any contradiction which
appears either in his own testimony or in the testimony of
others.

[You will remember that in the contract sued upon there is
a provision that if the said Morrow fails to attend to the duties
of his employment to the injury or detriment of the said com-
pany's interests, then this agreement may be canceled at
the option of the Tunkhannock Ice Company without notice
to the said Morrow or the payment to him of any compensation
or commission for the remainder of the said term.   I think,
gentlemen, that the evidence in this case is undisputed that
there was no attempt to discharge Mr. Morrow from his duties
as sales agent until the end of the season, and that later in
September, a letter was written, embodying what had been done

and discharged him from duty, and in that letter there was a statement that the discharge was to date back to the first of February in the year 1900. We instruct you, gentlemen, that that discharge would not date back to any time previous to the time when Mr. Morrow was notified by the defendant or its officers that he was discharged, which as already stated was at the end of the season, so that so far as the discharge is concerned, it is practically of no relevancy in this case. If Mr. Morrow did his duty, as we have endeavored to explain it to you, and substantially performed his undertaking, he would be entitled to a verdict for the amount which we have stated. If he did not do so the fact that he was not discharged until the end of the season, would not entitle him to recover. Whether discharged or not he could not recover unless he had performed his contract substantially.] [1]

You may consider from the evidence in the case, whether or not the defendant company waived strict performance by the plaintiff of any of his undertakings, and if they did, if you find from the weight of the evidence that they did waive its performance in any particular, then he would not be required to do those things the doing of which had been so waived.

[If you believe from the evidence that the plaintiff in this case, C. C. Morrow, has substantially performed and done that which he contracted to do, then he is entitled to the compensation which the defendant company contracted to pay. If you believe that he did not, then he is not so entitled.] [2]

*Errors assigned* were (1–5) above instructions, quoting them.

*A. Mitchell Palmer*, for appellant.—The contract established the relation between these parties of master and servant: Jones v. Coal Co., 1 Pa. Superior Ct. 331; Allen v. Colliery Engineers' Co., 196 Pa. 512.

The contract in this case is very similar to that in Peniston v. John Y. Huber Company, 196 Pa. 580.

Where neither the thing to be furnished nor the consideration to be paid was single and indivisible, the plaintiff is entitled to go to the jury on the value of the services actually rendered, measured by the contract price for the service stipulated: U. S. Water Works Co. v. Dubois Boro., 176 Pa. 439.

The case of Elliott v. Wanamaker, 155 Pa. 67, is similar in some respects to the case at bar.

*Wilton A. Erdman*, for appellee.—The question of substantial compliance with a contract is one for the jury : Shires v. O'Connor, 4 Pa. Superior Ct. 465 ; Patterson v. Brace, 198 Pa. 107.

Faithful service is a condition precedent to the right of a servant to his wages : Libhart v. Wood, 1 W. & S. 265 ; Williams v. Eldridge, 9 Kulp, 566 ; Ulrich v. Hower, 156 Pa. 414.

Our case is very similar to the case of Columbian Fire Proofing Co. v. Great Northern Paper Co., 207 Pa. 232.

OPINION BY MR. JUSTICE POTTER, April 10, 1905 :

On October 24, 1899, Cyrus C. Marrow entered into a written agreement with the Tunkhannock Ice Company by which he agreed to accept the position of general sales agent for the company for a term of five years from January 1, 1900, " and as such to devote his time and ability to the best interest and welfare of the said company ; . . . to solicit trade, negotiate and make sales of the entire capacity of the said company, attend to the collection of the accounts . . . . adjust all freight rates and in general arrange for the sale and delivery of the ice product of the company," and make daily reports of all sales direct to the office of the company. The agreement provided that " in consideration of the faithful performance of his duties by said Morrow " the company would employ him as general sales agent for the term stated, and would pay " for his services during the said term if he shall so long remain in the employ of the company as aforesaid, $1.00 per car for ice shipped from the company's plant," with a certain exception ; all payments to be made to said Morrow on the fifth of each month for deliveries of ice made the preceding month. The agreement further stipulated that Morrow should give preference of sales to the company's ice until it was disposed of. And " if said Morrow fails to attend to the duties of his employment, to the injury or detriment of the said company's interests, then this agreement may be canceled at the option of the Tunkhannock Ice Company, without notice to said Morrow or the payment to him of any compensation or commission for the remainder of the term."

On September 8, 1900, the ice company wrote a letter to Morrow in which he was formally notified that by reason of the breach upon his part of the contract of October 24, 1899, "the same has been considered void and of no effect from February 1, by which time we had ascertained that you were making no effort to place our ice, and in fact did not sell any. We are fully prepared to pay, and inclose herewith our check for $82.00 for D. L. & W. ice sold as per agreement between you and Mr. Daub. During the past season you have failed to attend to your duties under the contract, to the injury and detriment of this company's interests."

It appears from the evidence of Mr. Daub, the president of the defendant company, that the discharge was given in a conversation between Daub and the plaintiff, and, as he said, "it was understood that he had performed no duty for us and of course he could expect no compensation." Afterwards this witness fixed the date of the discharge as March 15, 1900. This testimony does not seem to have been contradicted by plaintiff. On February 7, 1901, Morrow brought this action of assumpsit against the ice company, and in his statement declared upon the written agreement, averred performance on his part, and claimed the stipulated compensation from January 1, 1900, to January 5, 1901, at the rate of $1.00 per carload of ice shipped by the company during that time.

The defendant pleaded non assumpsit. On the trial, plaintiff presented evidence to show performance, while defendant sought to prove that plaintiff had not discharged his duties. In addition, a witness, who was one of the managers and treasurer of the Mountain Ice Company, testified that in February, 1900, Morrow called on him and told him that he had from 15,000 to 25,000 tons of summer ice, and wanted to know if the witness' company could handle it. He said the ice cost him sixty-five cents to seventy cents, and offered to load it on the cars of witness' company, and charge to them at $1.25; they to sell the ice at the other end and bear the expense of doing so, and the profits to be divided between the company and Morrow. They were to pay the original price (sixty-five cents to seventy cents) to the company that furnished the ice. Morrow did not state what particular pond the ice was taken from, but merely stated that he had it to sell and that it was mountain ice. The sale

was not made, as Morrow reported that the ice had been disposed of elsewhere. But if the evidence as to this effort was believed, it showed bad faith on the part of plaintiff, in that instead of trying to secure the highest market price for the defendant's product, he was endeavoring to make a secret profit for himself, at its expense.

The trial judge left it to the jury to find whether or not the plaintiff had performed substantially his contract; if so, he was entitled to recover. The jury found for the defendant. The plaintiff has appealed, and has here assigned the instructions of the trial court as error. Appellant contends that the agreement established the relation of master and servant between the defendant company and himself, and that even if the jury found the discharge was rightful, he was entitled to the wages of his service as long as that service was rendered to his employer. And that if the discharge was not rightful, he was entitled to receive his entire claim.

The appellee denies that the agreement constituted the relation of master and servant, and contends that in order to recover at all, appellant was bound to first show performance on his part, which he failed to do to the satisfaction of the jury. He contends further that he was not only bound to do this under the law, but also under the pleadings which raise that express issue. It is further urged on behalf of the appellee that, even if it should be conceded that the relation between the parties was that of master and servant, yet the unfaithfulness of the appellant, if found by the jury, was sufficient to prevent recovery of wages and compensation by him.

By the terms of the contract the plaintiff was to sell ice for the defendant. Plaintiff acquiesced in this view and on the trial undertook to prove performance. Upon the other hand, the evidence upon the part of the defendant was to the effect that the plaintiff wholly neglected his duty, and had made no sales at all under the contract. In this situation it was for the jury to decide between the parties as to this disputed question of fact, and this without regard to whether the contract was entire, or severable. We do not regard this as a case in which the relation of master and servant existed, it was an employment to make sales on commission. The situation here is totally different from that which prevails where a servant is employed

under the eye or the general observation of the master. The verdict of the jury was against the claim made by the plaintiff, and established the fact, that he had not performed the services called for under the contract. He was not, therefore, wrongfully discharged. Allen v. Engineers' Co., 196 Pa. 512, can have no application here, for in that case an employee was wrongfully discharged.

In the present case, we have the plain finding that the plaintiff had not performed the service which he had agreed to render. If this is true, there is no reason why he should be paid anything, for he has earned nothing. It is not necessary, therefore, to consider whether the contract was entire, and whether, if so, the plaintiff was entitled to recover for services rendered up to the time of dismissal.

We think it is clear that the intention of the parties to this contract, was to provide, through the agency of the plaintiff, for the sale of the entire product of the defendant company. Everything else that the plaintiff was to do was incidental to this, which was the main purpose of his employment. It mattered not whether he made the sale in one day, or by efforts extending through many days. The service he was to render was essentially the selling of the defendant's crop of ice. This he failed to do, not merely in part, but wholly, and by reason of this failure, it may fairly be said that he rendered no service, for which he was under the contract entitled to compensation. He was not to be paid for doing nothing, but for doing something.

The small amount of ice which he did sell and for which he was paid, was under a special agreement and not under the terms of this contract. We see no error in the theory upon which this case was tried nor in the manner of its submission to the jury.

The assignments of error are overruled and the judgment is affirmed.